**In re Daniel Lee LYBROOK & Linda Lou Lybrook, Debtors.**

**Margret G. ROBB, Trustee, Plaintiff,**

**v.**

**Daniel Lee LYBROOK & Linda Lou Lybrook, Defendants.**

Bankruptcy No. 86–40164.
Adv. No. 87–4081.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Lafayette.

Nov. 21, 1989.

Margret Robb, Lafayette, Ind., for plaintiff.

David A. Rosenthal, Lafayette, Ind., for defendants.

## AMENDED MEMORANDUM OF DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter previously came before the court on the parties' cross motions for summary judgment with regard to the Plaintiff/Trustee's complaint for turnover. The complaint and the various motions asked the court to determine whether certain assets, in which the debtors have an interest, constitute property of the bankruptcy estate. The court granted partial summary judgment as to some of the property interests in question. At a subsequent pre-trial conference, the parties entered into stipulations of fact as to the issues the court was not initially able to resolve.

This case began as a Chapter 13 when the debtors filed their petition for relief on March 24, 1986. The debtors were never able to obtain confirmation of a Chapter 13 plan and the case was converted to Chapter 7 in June of 1987. This scenario would not be extraordinary but for the fact that debtors' financial position changed dramatically between the date they sought relief under Chapter 13 and the date of conversion to Chapter 7. Between these two dates, Mr. Lybrook's father changed his will to include his son as a beneficiary. He then died unexpectedly on January 17, 1987, with the result that his son became entitled to inherit assets valued at more than $70,000.00. Mr. Lybrook died more than 180 days after the date of the debtors' petition for relief under Chapter 13 and, yet, before the date of conversion to Chapter 7. The primary issue which the parties have placed before the court is whether or not this inheritance is part of the Chapter 7 bankruptcy estate. The court must also answer the same question with regard to a certificate of deposit, which existed on the date of the petition but was cashed and used to fund operations during the Chapter 13, and tax refunds for years prior to conversion.

Had this proceeding originally commenced under Chapter 7, the inheritance would not have become part of the Chapter 7 bankruptcy estate. 11 U.S.C. § 541(a)(5)(A). The Chapter 13 estate, however, is much more inclusive than the one created under Chapter 7. It encompasses not only the property that would otherwise constitute the Chapter 7 estate but also "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted...." 11 U.S.C. § 1306(a)(1). Accordingly, the inheritance became property of the Chapter

13 estate. The parties do not dispute this fact. The point of contention is whether the inheritance *remains* property of the bankruptcy estate following conversion to Chapter 7. This is a legal question on which there is no harmony of opinion and it is impossible to reconcile the opposing conclusions.[1]

The dispute has its origins in the provisions of § 348, which specifies the effect of conversion, and how its terms impact upon the provisions of § 541 and § 1306, which govern property of the estate. Section 541 provides that the bankruptcy estate is created upon the commencement of a case. It then identifies what becomes property of the estate and what is excluded from it. Section 1306 expands the Chapter 13 estate beyond its composition as described by § 541. It includes not only the property that would otherwise become property of the estate under § 541 but also essentially all property the debtor acquires after the commencement of the case, until it is closed, dismissed or converted. In describing the effects of conversion, § 348 does not directly address the composition of the bankruptcy estate. It states only that, with certain exceptions, conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

Those courts which hold that post-petition property, which became property of the estate pursuant to the expansive provisions of § 1306, is not property of the Chapter 7 bankruptcy estate upon conversion reach this conclusion by focusing solely on the language of § 348 and § 541. They note that, pursuant to § 348(a), conversion from Chapter 13 to Chapter 7 does not change the date of the petition, the commencement of the case, or the order for relief. They then note that under § 541

the bankruptcy estate is created as of the date of the petition. Observing that § 1306 ceased to operate once the case was converted to Chapter 7, these decisions conclude that conversion nullified the effect of § 1306 and "served to re-define the property of the bankruptcy estate ... within the original parameters of Code § 541." *In re Marshall,* 79 B.R. 147, 150 (Bankr.N.D.N.Y.1987). *See also In re Lepper,* 58 B.R. 896 (Bankr.D.Md.1986); *In re Peters,* 44 B.R. 68 (Bankr.M.D.Tenn.1984). The ultimate result of this conclusion is that the case is treated as though it has always been a Chapter 7, for the purposes of defining property of the bankruptcy estate.[2]

This court cannot agree with this conclusion. It is one thing to recognize that conversion does not affect the date upon which the case was commenced. It is quite another thing, however, to draw from this principle the doctrine that the case will be treated as though it had always proceeded under Chapter 7. Section 348(a) merely specifies that the date of the petition, commencement, and order for relief are unchanged. Its provisions do not mandate or necessarily imply "that upon conversion a case is to be treated in all respects as if it had originally been filed under the chapter to which it has been converted." *Matter of Ford,* 61 B.R. 913, 916 (Bankr.W.D.Wis. 1986); *In re Tracy,* 28 B.R. 189, 190 (Bankr.D.Me.1983).

Section 348 does not, by its terms, require the court to look back to the date of the petition to determine the property of the bankruptcy estate upon conversion. The courts which do so have lost sight of the spirit and purpose of § 348. They have also failed to interpret it in conjunction with the rest of the Bankruptcy Code.

Section 348 cannot be construed in isolation. Like the pieces of a mosaic, it must be viewed along with the other statutory

---

1. To the extent reported decisions have involved competing claims to funds in the possession of the Chapter 13 trustee, the issue would seem to have been laid to rest by the 1984 amendments to the Bankruptcy Code. *See* 11 U.S.C. § 1326(a)(2). Many of these arguments and much of the analysis, however, continue to be relevant.

2. Other authorities reaching this same conclusion include: *In re Luna,* 73 B.R. 999 (N.D.Ill. 1987). *In re Payne,* 88 B.R. 818 (Bankr.E.D. Tenn.1988); *Matter of Gorski,* 85 B.R. 155 (Bankr.M.D.Fla.1988); *In re Lennon,* 65 B.R. 130 (Bankr.N.D.Ga.1986); *In re Bullock,* 41 B.R. 637 (Bankr.E.D.Pa.1984); *In re Hannan,* 24 B.R. 691 (Bankr.E.D.N.Y.1982).

provisions of which it is intimately a part, in order to properly understand the entire creation. In considering the impact of § 348 upon the constitution of the bankruptcy estate, we must adopt a construction which is consistent with the remaining provisions of the Bankruptcy Code.

A proper reading of § 348 indicates that it is not a source of disruption but, instead, preserves the continuity of the bankruptcy proceedings. *Matter of Ford, supra,* 61 B.R. at 916. It should not be read as a nullification act. It is not designed to change what has gone before but, rather, to leave matters as they exist on the date of conversion. Only to the extent necessary to assist in the administration of the bankruptcy estate, broaden the creditor body who may participate in its distribution and, concomitantly, the scope of a debtor's discharge does § 348 have other provisions of the Code operate from the date of conversion. *In re Wanderlich,* 36 B.R. 710, 714 (Bankr.W.D.N.Y.1984). To interpret § 348 as requiring the court to reshuffle the bankruptcy estate upon conversion is to make it a source of disruption.

When § 348 is viewed as a source of continuity, the plain language of § 541 easily becomes susceptible to the conclusion that the bankruptcy estate, following conversion from Chapter 13 to Chapter 7, is the Chapter 13 bankruptcy estate. The estate was created upon the commencement of the case. 11 U.S.C. § 541(a). At the moment of creation, it essentially consisted of all of the property in which debtor had an interest. 11 U.S.C. § 541(a)(1). The estate does not, however, remain static. It also includes "any interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).

Through § 1306, the estate acquires an interest in the property debtor acquires between the date of the petition and the date of conversion. By its terms, § 541(a)(7) is broad enough to include this post-petition property in the Chapter 7 bankruptcy estate, following conversion from Chapter 13. It is able to do so through a simple reading of its plain language, without resorting to strained or contorted interpretations of the consequences of conversion. Instead, it is merely a recognition that § 348 "does not purport to alter or modify the provisions or applicability of sections 541 and 1306." *In re Wanderlich, supra,* 36 B.R. at 714.

This result is consistent with the debtor's rights upon conversion. When a case is converted to Chapter 7, a debtor may amend its original claim of exemptions. In doing so, it is not limited to the property as it existed on the date of the petition. Instead, exemptions may be claimed out of property acquired during the course of the Chapter 13 or based upon its status as of the date of conversion rather than the date of the petition. *In re Lindberg,* 735 F.2d 1087 (8th Cir.1984); *In re Winchester,* 46 B.R. 492 (9th Cir.BAP 1984). *See also In re Mutchler,* 95 B.R. 748 (Bankr.D.Mont. 1989).

Issues surrounding confirmation and the post-confirmation modification of a plan also support this conclusion. In order to win confirmation of a proposed plan, the plan must be in the best interests of creditors, by distributing at least as much to creditors as they would receive upon liquidation. 11 U.S.C. § 1325(a)(4) This hypothetical liquidation analysis is based upon the bankruptcy estate as it exists at the time of confirmation and not upon its composition when the petition was originally filed. *See In re Barnett,* 95 B.R. 477 (Bankr.W.D.Ky.1988); *Matter of Bluridg Farms, Inc.,* 93 B.R. 648, 651–54 (Bankr. S.D.Iowa 1988) (both cases discussing the identical Chapter 12 counterpart to § 1325(a)(4)). Similarly, pursuant to § 1329(a), a debtor can be required to amend its plan following confirmation, due to a change in circumstances. *In re Arnold,* 869 F.2d 240 (4th Cir.1989). Such a change includes debtor's unanticipated good fortune. *See In re Euerle,* 70 B.R. 72 (Bankr.D.N.H.1987) (inheritance); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (winning the lottery). Thus, throughout the entire course of a Chapter 13, creditors have a legitimate expectancy in receiving a distribution based on the debtor's circumstances and the composition of the bank-

ruptcy estate as they presently exist, not as they once were when the petition was filed. *Cf. In re Arnold, supra,* 869 F.2d at 242 & 243 ("Congress ... intended ... that the debtor repay his creditors to the extent of his capability during the Chapter 13 period.... When a debtor's financial fortunes improve, the creditors should share some of the wealth"). It makes little sense to recognize this expectancy so long as the case remains in Chapter 13 and then completely disregard it by excluding post-petition property from the bankruptcy estate upon conversion to Chapter 7.

To exclude post-petition property from the bankruptcy estate upon conversion from Chapter 13 to Chapter 7 would automatically build a strange anomaly into the Bankruptcy Code. Debtors would easily be able to avoid the rigors of the best interests test or a required modification to a confirmed plan by the simple expedient of converting. In doing so, they would be able to retrieve for themselves the very property which motivated the court's decision concerning the plan and, thus, completely escape compliance with the court's orders. The Bankruptcy Code should not be interpreted in a way that will facilitate such evasion.

The debtor's options, should Chapter 13 prove unsuccessful, and the scope of any subsequent discharge also illuminate the issues concerning the proper constitution of the post-conversion bankruptcy estate. *See In re Tracy, supra,* 28 B.R. at 190. The debtor who is unable to successfully confirm and/or perform a Chapter 13 plan has two primary options. The case may be converted or it may be dismissed to be followed, if necessary, by a separate petition under Chapter 7.[3] The opportunity to do either is almost absolute. 11 U.S.C. § 1307(a & b).

From the debtor's standpoint, there is no substantive difference between conversion and a dismissal followed by a separate proceeding, insofar as these options impact upon creditors' claims. In either case, the claims are equally dischargeable, regardless of whether they arose before or during the Chapter 13. Consequently, where the scope of the discharge is concerned, the result is the same whether the case is converted to Chapter 7 or dismissed and immediately followed by a separate petition under Chapter 7. Congress specifically contemplated and intended this to be so. *See* 124 Cong.Rec. H11098 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards), *reprinted in* 9 Bkr–L Ed § 81:3, at 37 (1979).

Where the case is dismissed and a new petition filed, there is no question but that property acquired by the debtor during the course of the Chapter 13 becomes part of the bankruptcy estate in the subsequent proceeding. Thus, although the choice between conversion and dismissal will have no impact upon the scope of the debtor's discharge, to make the composition of the bankruptcy estate dependant upon which option is selected may have a dramatic impact upon the assets which can be distributed on account of those same claims.

The Seventh Circuit has cautioned against interpreting the Bankruptcy Code in a way that would create strategic incentives, which could influence the decision to choose between alternatives. *See Matter of Northwest Engineering Co.,* 863 F.2d 1313, 1317–18 (7th Cir.1988). To exclude property acquired after the date of the original petition from the bankruptcy estate, following conversion to Chapter 7, would create just such an incentive to influence the debtor's decision of what to do when the Chapter 13 proves unsuccessful. There should not be any difference in the consequences to either debtors or creditors between the conversion of an unsuccessful Chapter 13 and the dismissal of that case followed by a separate proceeding. *See In re Wanderlich, supra,* 36 B.R. at 716. The discharge which results from either course of action is the same. The price of that discharge should not depend upon which alternative is selected.

Chapter 13 offers debtors many benefits and advantages which are not available under Chapter 7. No course of action, however, is without its risks. One of these

---

**3.** We discuss elsewhere the option of a hardship discharge and its ramifications. *See* p. 615.

risks is that the debtor's efforts may fail. Yet, during its attempt at rehabilitation, assets which existed on the date of the petition may depreciate, be consumed, disposed of, or dissipated, so they are no longer available for the satisfaction of the claims of creditors. In the same fashion, additional obligations may be incurred which remain unpaid on the date of conversion. Such post-petition, pre-conversion claims are covered by the debtor's subsequent discharge and are entitled to share in any distribution from the bankruptcy estate, along with the creditors who existed on the date of the original petition. Consequently, a debtor's efforts at rehabilitation present risks for its original creditors. They risk the possibility that the size of the available bankruptcy estate may be diminished, while at the same time the amount of claims which must be satisfied from that estate increase. Since creditors are forced to bear the risks of any deterioration in a debtor's financial standing during the course of a Chapter 13, they should also have the opportunity to share any benefits which might flow from an improvement in that position during this same period of time. *See In re Winchester, supra,* 46 B.R. at 495.

The court, therefore, holds that the property of the Chapter 13 bankruptcy estate, as created by § 1306, remains property of the bankruptcy estate following conversion to Chapter 7 and becomes property of the Chapter 7 estate. *See In re Lindberg, supra,* 735 F.2d at 1090–91; *In re Winchester, supra,* 46 B.R. at 495; *In re Mutchler, supra,* 95 B.R. at 751–53 (discussing conversion from Chapter 12 to Chapter 7); *Matter of Brownlee,* 93 B.R. 662 (Bankr.S.D.Iowa 1988) (discussing conversion from Chapter 12 to Chapter 7); *In re Kao,* 52 B.R. 452 (Bankr.D.Or.1985); *In re Wanderlich, supra,* 36 B.R. at 712–15; *In re Tracy, supra,* 28 B.R. at 190. This conclusion is supported by a proper reading of § 348, the overall structure and operation of Chapter 13 and the Bankruptcy Code, as well as considerations of policy. It gives the Bankruptcy Code a symmetrical order and unity, based upon the interplay of all its different parts, which allows it to operate as a coherent whole rather than a fragmented and disconnected collection of miscellaneous rules. The result is the same regardless of whether conversion occurs before or after confirmation.

In reaching this conclusion, the court notes that other provisions of the Bankruptcy Code soften its full impact. Where conversion occurs before confirmation, the Chapter 13 trustee is required to return any payments it has received to the debtor. 11 U.S.C. § 1326(a)(2). This gives a debtor the opportunity to shield assets acquired post-petition from the claims of creditors.[4] Where a plan has already been confirmed, conversion to Chapter 7 is not the debtor's only option. Rather than converting, upon the inability to fulfill the terms of a confirmed plan and the impracticability of modifying that plan, the debtor may seek a discharge under § 1328(b). If all of the required conditions are met, a discharge under these circumstances will place the debtor in essentially the same position as though relief under Chapter 7 had initially been sought. This will allow the debtor to shield its post-petition assets from the claims of its pre-petition creditors. While those assets will not be protected from the claims of post-petition creditors, as they would be in the event of conversion, they would not have been protected had the petition originally been filed under Chapter 7.

The inheritance is property of the bankruptcy estate and must be turned over to the trustee. *Matter of Brownlee, supra,* 93 B.R. at 666–67.

---

4. Funds in the possession of the trustee still represent property of the bankruptcy estate. In this situation, however, the Bankruptcy Code provides that they are to be distributed to the debtor rather than to its creditors. This provision recognizes the rebuttable presumption that funds in the possession of the trustee are derived from post-petition earnings. *See In re Lennon, supra,* 65 B.R. at 139. Since the presumption is merely a rebuttable one, a debtor could not shield pre-petition property or its proceeds from distribution on account of creditors' claims by delivering it to the trustee.

Where the certificate of deposit and the 1985 income tax refund are concerned, the debtors are not obligated to turn their value over to the trustee. Although these assets existed on the date of the petition, during the course of the Chapter 13, debtors used the proceeds to fund their farming operations. They have been entirely consumed in the debtors' normal business operations and there is no suggestion that they were improperly disposed of. *See* 11 U.S.C. § 1304(b).

As to the debtors' 1986 income tax refund, payable in 1987, this asset was originally delivered to the Chapter 13 trustee, prior to conversion. It is currently in the possession of the Chapter 7 trustee. Pursuant to § 1326(a)(2), it should be delivered to the debtors.

There being no genuine issues of material fact, summary judgment will be granted accordingly.